UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VERNON EUGENE PROCTOR,

    Plaintiff,

v.                                                      Case No. 1:19-CV-415

KAREN KRZANOWSKI and                        HON. GORDON J. QUIST
DESMOND MITCHELL,

    Defendants.
_____/

## OPINION REGARDING DEFENDANTS' MOTION TO DISMISS
## AND PLAINTIFF'S MOTION TO AMEND

Plaintiff, Vernon Eugene Proctor, is suing Defendants, Karen Krzanowski and Desmond Mitchell, pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his procedural due process rights when the Michigan Department of Licensing and Regulatory Affairs (LARA) personnel stopped accepting applications for medical marihuana dispensation that were accompanied by a written certification from Plaintiff, a licensed physician. Defendants filed a motion to dismiss the complaint, arguing that (1) Defendants are immune from suit under the Eleventh Amendment; (2) Plaintiff lacks standing; (3) Plaintiff has not articulated a cause of action against Defendant Mitchell; (4) Plaintiff did not have a federal due process right to certify medical marihuana applications; and (5) Defendants are entitled to qualified immunity on Plaintiff's claim. (ECF No. 8.) Plaintiff responded to the motion to dismiss and also filed a motion to amend his complaint. (ECF Nos. 9, 10.) The Court finds that Plaintiff lacks a property or liberty interest in acceptance of his written certifications, or at least such an interest was not clearly established. Thus, Defendants are entitled to qualified immunity. The added factual allegations in the proposed

amended complaint do not change the analysis. Therefore, the Court denies the motion to amend because the amendment would be futile.

## I. Factual Allegations

Plaintiff is a licensed physician. (ECF No. 1 at PageID.2.) In February 2016, Defendant Krzanowski became the manager of the Michigan Medical Marihuana Section within the Bureau of Professional Licensing of LARA. Beginning in February 2016, employees from Defendant Krzanowski's section called Plaintiff's office on multiple occasions to verify patients' applications for medical marihuana registry cards. The LARA employees attempted to verify the information using the patients' name and birthdates. (Id.) Plaintiff and his staff asked the LARA employees to, instead, provide the date of the certification because that was the primary method by which Plaintiff organized his files. (Id. at PageID.2-3.) On only two occasions, LARA employees provided the date of certification. On those two occasions, the request for verification was answered within 30 minutes. A member of Plaintiff's staff asked Defendant Mitchell to put the requests for verification in writing (rather than orally over the phone), but Defendant Mitchell refused. (Id. at PageID.3.)

On June 15, 2016, two patients informed Plaintiff that Defendants were no longer accepting applications that were accompanied by a certification from Plaintiff because of Plaintiff's refusal to participate in LARA's verification process, *i.e.* by verifying certifications using names and birthdates. On that same day, Defendant Krzanowski confirmed over the phone that Defendants would no longer accept certifications from Plaintiff. (Id.) Defendants did not provide Plaintiff with any notice or an opportunity to be heard before deciding to no longer accept Plaintiff's certifications, nor did they provide Plaintiff notice of any available procedure to challenge the decision. (Id. at PageID.6-8.) Nonetheless, Defendants resumed acceptance of Plaintiff's

2

certifications in July 2016, when he began participating in Defendants' ordinary verification procedures. (ECF No. 8 at PageID.32-33.)

## II. Eleventh Amendment Immunity

Plaintiff's complaint does not identify the capacity in which Defendants are being sued—official or individual. Defendants argue that absent any indication that Defendants are being sued in their individual capacities, courts must assume that Defendants are being sued in their official capacities, *Whittington v. Milby*, 928 F.2d 188, 193 (6th Cir. 1991), and, because officials acting in their official capacities are not subject to suit under 42 U.S.C. § 1983 due to Eleventh Amendment immunity, *Will v. Michigan Department of State Police*, 491 U.S. 58, 71, 109 S. Ct. 2304, 2312 (1989), Plaintiff's claims should be dismissed. However, even if Plaintiff does not affirmatively plead individual capacity claims, as long as there is some indication in the complaint that puts Defendants on notice that they are being sued in their individual capacities, the claims should proceed. *Moore v. City of Harriman*, 272 F.3d 769, 772 (6th Cir. 2001). Moreover, Plaintiff could cure the defect if the Court grants his motion to amend. Therefore, Eleventh Amendment immunity is not a valid reason to dismiss Plaintiff's claims.

## III. Standing

Defendants argue that Plaintiff's theory of liability revolves around the denial of his patients' marihuana registry cards, and thus Plaintiff lacks standing because "[o]rdinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party." *Barrows v. Jackson*, 346 U.S. 249, 255, 73 S. Ct. 1031, 1034 (1953). However, Plaintiff is not suing because his patients' applications were denied; Plaintiff is suing because his own written certifications were being denied. Accordingly, Plaintiff is suing for an injury that he personally suffered, not an injury suffered by a third party. Therefore, he has standing to sue Defendants. *Gladstone Realtors v. Vill. of Bellwood*, 441 U.S. 91, 99, 99 S. Ct. 1601, 1607–08 (1979) ("In order to satisfy Art. III,

the plaintiff must show that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.").

## IV. Personal Involvement of Defendant Mitchell

Plaintiff's complaint names Defendant Mitchell in only three paragraphs. The factual allegations regarding Defendant Mitchell are that Mitchell was asked by Plaintiff's staff to put verification requests in writing, but Mitchell refused to do so, and that Mitchell "was involved in the decision to reject patient applications accompanied by a certification from Plaintiff." (ECF No. 1 at PageID.4.) Plaintiff seeks to amend his complaint to clarify that Defendant Mitchell personally approved the decision to deny written certifications from Plaintiff. Because the motion to amend could clarify Defendant Mitchell's involvement, the Court will not dismiss on this ground.

## V. Procedural Due Process Rights

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569–70, 92 S. Ct. 2701, 2705 (1972).

Defendants characterize Plaintiff's interest as the right to prescribe medical marihuana, which is *not* a recognized federal right. In fact, prescribing marihuana could be a serious violation of federal law. Nevertheless, there are a few problems with Defendants' characterization. First, Plaintiff was not prescribing marihuana; he was submitting written certifications to accompany patients' applications for medical marihuana. Second, Defendants' argument focuses on the fact that no one has a *substantive* due process right to possess, use, or prescribe marihuana, but Plaintiff is claiming a *procedural* due process right to have notice and an opportunity to be heard prior to Defendants' decision to not accept Plaintiff's written certifications. *See Sacramento Nonprofit*

4

*Collective v. Holder*, 552 F. App'x 680, 683 (9th Cir. 2014) (finding that plaintiffs did not have a substantive due process right to distribute, possess, and use medical marihuana).

Plaintiff also mischaracterizes the interest at issue. Plaintiff claims that Defendants restricted his medical license, and a state-issued medical license is a recognized property interest. Plaintiff argues that the Court must accept his factual allegation that his medical license was restricted in deciding a motion to dismiss. However, Plaintiff stating that "Defendants placed a restriction on his license," (ECF No. 1 at PageID.6), is a conclusion, not a factual allegation, which need not be accepted by the Court. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964–65 (2007) ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions") (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S. Ct. 99, 103 (1957)).

Plaintiff's factual allegation is that Defendants stopped accepting applications accompanied by written certifications from Plaintiff. As such, the Court needs to determine whether Plaintiff has a liberty or property interest in the acceptance of his written certifications.

While courts have never "define[d] with exactness the liberty guaranteed by the Fourteenth Amendment, it denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life . . . ." *Roth*, 408 U.S. at 572, 92 S. Ct. at 2706-07 (internal alterations omitted). Property interests have been more closely delineated: "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Id*. at 577, 92 S. Ct. at 2709.

Defendants' decision did affect Plaintiff's occupation. Suspension of a state-issued license, *Moody v. Michigan Gaming Control Bd.*, 790 F.3d 669, 678 (6th Cir. 2015), or conduct that "jeopardize[s] [an individual's] license to practice medicine and impinge[s] upon his right to

practice medicine," *Watts v. Burkhart*, 854 F.2d 839, 842 (6th Cir. 1988), implicate interests protected by procedural due process. However, Defendants did not suspend Plaintiff's license, nor take any action that would put Plaintiff's license at risk or prevent Plaintiff from practicing medicine. Accordingly, Plaintiff did not have a liberty or property interest protected by the Fourteenth Amendment.

## VI. Qualified Immunity

Even if this Court were to find that Plaintiff had a liberty or property interest in the acceptance of his written certifications, that right was not clearly established at the time Defendants acted. Therefore, Defendants are entitled to qualified immunity.

"Government officials are immune from civil liability under 42 U.S.C. § 1983 when performing discretionary duties, provided 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Simmonds v. Genesee Cty.*, 682 F.3d 438, 443 (6th Cir. 2012) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S. Ct. 2727, 2738 (1982)). "Once a defendant raises qualified immunity, the burden is on the plaintiff to demonstrate that the official is not entitled to qualified immunity by alleging facts sufficient to indicate that the government official's act in question violated clearly established law at the time the act was committed." *Id.* at 444 (internal quotation marks, citations, and alterations omitted). In all, qualified immunity is meant to prevent government officials from being held liable for "reasonable mistakes of law, fact, or mixed questions of law and fact made while acting within their scope of authority." *Id.* at 443.

"The first prong of the qualified immunity analysis asks whether a constitutional violation has occurred, that is, whether 'a violation could be made out on a favorable view of the parties' submissions.'" *Pucci*, 628 F.3d at 765 (quoting *Saucier v. Katz,* 533 U.S. 194, 201, 121 S. Ct. 2151, 2156 (2001)). "If a constitutional violation can be found, the second prong of a qualified

6

immunity analysis examines whether the right was clearly established at the time of the deprivation." *Id*. at 767 (internal quotation marks omitted). The Supreme Court has held that, in determining whether a right was clearly established, liability attaches "only if the contours of the right violated are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *United States v. Lanier*, 520 U.S. 259, 270, 117 S. Ct. 1219, 1227 (1997) (internal quotation marks, citation, and alterations omitted).

First, Plaintiff argues that Defendants actions were not discretionary, and so, Defendants are not entitled to qualified immunity. Discretionary acts are "those which involve significant decision-making that entails personal deliberation, decision and judgment," as opposed to ministerial acts, which "involve the execution or implementation of a decision and entail only minor decision-making." *Davis v. Holly*, 835 F.2d 1175, 1178 (6th Cir. 1987). Plaintiff claims that because Defendants rejected all applications accompanied by certifications from Plaintiff for a certain period of time, Defendants' actions were not discretionary. However, Plaintiff's complaint centers around Defendants' *decision* to stop accepting written certifications from Plaintiff. Moreover, Defendants exercised discretion in choosing the method of verification, deciding how to respond when a physician did not participate in their chosen method of verification, and resuming acceptance of Plaintiff's certifications once Plaintiff participated in the usual verification process. *See* Mich. Comp. Laws § 333.26425(b) (tasking LARA with promulgating rules to "govern the manner in which it shall consider applications for and renewals of registry identification cards"), § 333.26426(c) (charging LARA with verifying information in applications for medical marihuana); Mich. Admin. Code R 333.109 ("The department shall verify the information contained in an application and the accompanying documentation, which may include, but is not limited to, the following: . . . (d) Contacting the certifying physician directly by

7

telephone, e-mail, or mail to confirm the validity of the written certification."). Thus, Defendants' actions were discretionary.

Next, Plaintiff argues that the Court should not decide the issue of qualified immunity at this point because the Sixth Circuit has held that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015). The reason for the Sixth Circuit's "general preference" to withhold a ruling on qualified immunity until the summary judgment stage is that "[a]bsent any factual development beyond the allegations in a complaint, a court cannot fairly tell whether a case is obvious or squarely governed by precedent, which prevents us from determining whether the facts of this case parallel a prior decision or not for purposes of determining whether a right is clearly established." *Guertin v. State*, 912 F.3d 907, 917 (6th Cir. 2019) (internal quotation marks omitted). But when "pleadings in the case are not ambiguous" and "it is clear that no violation of a clearly established constitutional right could be found under any set of facts that could be proven consistent with the allegations or pleadings," the Court is well within its discretion to grant a pre-answer motion to dismiss on the basis of qualified immunity. *Jackson v. Schultz*, 429 F.3d 586, 589–90 (6th Cir. 2005). In this case, the pleadings are not ambiguous. Defendants are entitled to qualified immunity so long as Plaintiff does not have a clearly established liberty or property interest in acceptance of his written certifications. Plaintiff has alleged no other action taken against his medical license. Therefore, the Court can decide the question of qualified immunity at the motion-to-dismiss stage.

Finally, Plaintiff points to cases that show that a restriction or suspension of a medical license is entitled to procedural due process protections, but those cases do not defeat Defendants' claim to qualified immunity. Defendants "are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct

was clearly established at the time." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (internal quotation marks omitted). Importantly, the clearly-established standard "requires that the legal principle clearly prohibit the [Defendants'] conduct in the particular circumstances before them," and this "requires a high degree of specificity." *Id.* at 590. "[C]ourts must not define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Id.* (internal quotation marks omitted). Requiring due process protection for any conduct that affects a state-issued license would define clearly established law at too high of a level of generality. The cases Plaintiff cites prohibit *suspensions* of state-issued licenses. *Moody*, 790 F.3d at 678; *Watts*, 854 F.2d at 842. But Defendants did not suspend Plaintiff's license; they merely discontinued acceptance of his written certifications.

"Because qualified immunity is an immunity from suit rather than a mere defense to liability," and the Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation," it behooves the Court to take this opportunity to grant Defendants the qualified immunity to which they are entitled. *Pearson v. Callahan*, 555 U.S. 223, 231–32, 129 S. Ct. 808, 815 (2009) (internal quotation marks omitted).

### VII. Plaintiff's Motion to Amend

Under Rule 15, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Factors that may affect that determination include undue delay in filing, lack of notice to the opposing party, bad faith by the moving party, repeated failure to cure deficiencies by previous amendment, undue prejudice to the opposing party, and futility of the amendment." *Seals v. Gen. Motors Corp.*, 546 F.3d 766, 770 (6th Cir. 2008) (citing *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 459 (6th Cir.2001)).

9

Here, Plaintiff's proposed amendments merely clarify Defendant Mitchell's involvement and state that Defendant Krzanowski admitted, at an administrative hearing held on November 19, 2018, that she did what Plaintiff's complaint alleged she did. Plaintiff's proposed amendments do not alter the analysis on the motion to dismiss. Nothing in these proposed amendments is new; the hearing at which Defendant Krzanowski made these alleged admissions took place more than six months before Plaintiff filed his complaint. And the Court was already prepared to accept Plaintiff's factual allegations as true for the purpose of deciding the motion to dismiss. Because the amendment would be futile, Plaintiff's motion to amend is denied.

## VIII. Conclusion

The Court finds that Plaintiff lacks a property or liberty interest in acceptance of his written certifications, or at least his interest was not clearly established, such that Defendants are entitled to qualified immunity. The Court denies the motion to amend because the amendment would be futile.

A separate Order of Dismissal will be issued.

Dated: November 19, 2019 /s/ Gordon J. Quist
GORDON J. QUIST
UNITED STATES DISTRICT JUDGE